HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ATIGEO LLC, et al.,

   Plaintiffs,

  v.

JOSEPH JONAS,

   Defendant.

CASE NO. C08-0679RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' renewed motion for a temporary restraining order ("TRO") (Dkt. # 14). For the reasons stated herein, the court DENIES the motion and directs Plaintiffs to file a motion for preliminary injunction if they wish to continue to seek injunctive relief.

## II. BACKGROUND

The court first addressed this action in a May 5, 2008 order (Dkt. # 11) denying Plaintiffs' motion for an ex parte TRO. The court incorporates that order's findings of fact, and summarizes them briefly. Defendant Joseph Jonas was Plaintiffs' chief software architect until Plaintiffs terminated him on April 23, 2008. While working for Plaintiffs, he executed two agreements which purport to transfer intellectual property that he developed both during and before his employment. The first of those agreements ("First

ORDER – 1

IP Agreement") contains a covenant not to compete with Plaintiffs for two years following his employment.

On the day of Mr. Jonas's termination, he sent an e-mail to more than 100 customers, potential customers, business contacts, investors, and other persons connected with Plaintiffs. In the e-mail, he stated that the second agreement he entered with Plaintiffs ("Second IP Agreement") is void, and that he disputed Plaintiffs' ownership of all or part of their intellectual property.

In the wake of the April 23 e-mail, Plaintiffs filed this action and an ex parte motion for a TRO. They sought an injunction to prevent Mr. Jonas from disputing ownership of Plaintiffs' intellectual property, to prevent him from communicating about that dispute with third parties, and to prevent him from disclosing their confidential information. Some of that information was allegedly stored on two laptop computers that Mr. Jonas retained from his employment.

The court denied Plaintiffs' motion for two reasons. First, despite Plaintiffs' attempts to provide Mr. Jonas with actual notice of this action and the pending TRO, there was no indication that Mr. Jonas received notice. At no time prior to the court's May 5 order did Mr. Jonas submit anything to the court. Second, the court found no evidence of irreparable harm or the likelihood of irreparable harm. The court explicitly found "no basis to conclude that it is likely Mr. Jonas will unlawfully use, sell, or transfer the disputed intellectual property." May 5 order at 5. The court also noted that although there was evidence that Mr. Jonas had breached non-disclosure obligations, there was "no evidence that those breaches have resulted or will result in irreparable harm to Plaintiffs." *Id.*

The court extended Plaintiffs the option to renew their motion for a TRO by "either formally serving Mr. Jonas or providing him with actual notice of [the May 5] order and of their renewal of this motion." *Id.* at 8. More than four months later, on September 19, Plaintiffs served Mr. Jonas with the summons and complaint, the May 5

ORDER – 2

order, and their motion for a TRO from last spring. On September 22, they filed a notice that they were renewing their motion for temporary restraining order. Other than evidence of their service of documents on Mr. Jonas, Plaintiffs provided no new evidence to support the renewed motion.

Mr. Jonas's first submission to the court came on September 29, 2008. Mr. Jonas opposed the entry of a TRO, noting Plaintiffs' failure to provide any new evidence of irreparable harm. He also provided evidence about the circumstances surrounding the Second IP Agreement, how he obtained the e-mail addresses he used in his April 23 e-mail, his retention of Plaintiffs' laptop computers, and his conduct with respect to Plaintiffs' disputed intellectual property. Jonas Decl. ¶¶ 5, 7-8. He declared that, despite his disputes with Plaintiffs, he had "not used, disclosed, transferred, licensed, sold, or offered to license or sell, the software at issue in this matter[,] [and has] no intention of doing so until this matter is resolved." *Id.* ¶ 9.

Although the May 5 order permitted no reply briefing, Plaintiffs filed a reply brief on September 30. Whereas Plaintiffs provided no new evidence when they renewed their motion for a TRO, they submitted substantial new evidence in conjunction with their reply brief. Among other things, they submitted evidence that Mr. Jonas has been associating with Opspring LLC ("Opspring"), which is apparently an enterprise that competes with Plaintiffs.[1] They also submitted an August 29 e-mail that Mr. Jonas sent to Plaintiffs' Chief Executive Officer, Michael Sandoval, in which Mr. Jonas proposed various means of resolving the intellectual property dispute. Sandoval Decl., Ex. 1. Mr. Jonas sent the e-mail from the address "raduionbisca@gmail.com." Although the address suggests that the sender of the e-mail was Radu Bisca, one of Plaintiffs' software

---

[1] The evidence of Mr. Jonas's association with Opspring is thin. One of Plaintiffs' employees traced a September 4 e-mail from Mr. Jonas and concluded that it originated from Opspring's local area network. Leseberg Decl. ¶¶ 4-8. Later, Plaintiffs sent a private investigator to Opspring's offices. In response to a question from the investigator, an Opspring employee stated that Mr. Jonas would be in the office between 3:00 p.m. and 3:30 p.m. Peyovich Decl. ¶¶ 3-5. There is no evidence regarding what, if anything, Mr. Jonas is doing for Opspring.

ORDER – 3

engineers, it is plain from the content of the e-mail and Mr. Sandoval's response that Mr. Sandoval was aware at all relevant times that Mr. Jonas sent the e-mail.

On September 3, Mr. Bisca sent Mr. Jonas an e-mail demanding that he not use the "raduionbisca" e-mail address. Mr. Jonas responded on September 4 with a lengthy e-mail disparaging Mr. Sandoval and reiterating his disputes over ownership of intellectual property. Bisca Decl., Ex. 3.[2] Among other things, Mr. Jonas declared that Mr. Sandoval "should say thank you that I didn't ally with any of his enemies, yet." *Id.*

Plaintiffs also provide evidence that one of their investors filed suit against them and Mr. Sandoval in May 2008 in King County Superior Court. Trotta Decl., Exs. 1-3. The evidence is skeletal, but the investor appears to allege that Mr. Sandoval inappropriately used the investor's funds for his personal gain. The complaint in the state court action briefly mentions Mr. Jonas, and avers that uncertainty over the ownership of Plaintiffs' critical intellectual property has "hampered the sales and investment prospects" of Plaintiffs and their prospects for repaying their debt to the investor. Trotta Decl., Ex. 1 (First Amended Compl. ¶¶ 28-29).

Finally, Mr. Sandoval declared that Mr. Jonas's retention of Plaintiffs' confidential information had harmed them. His declaration provides few details, but states that some combination of Mr. Jonas's conduct and the state court lawsuit have led potential investors and business partners to decline to do business with Plaintiffs. Sandoval Decl. ¶ 2.

On October 1, Mr. Jonas requested that the court either ignore the new evidence Plaintiffs submitted, or permit him to submit additional briefing to counter it. Plaintiffs acceded to the request for additional briefing, but Mr. Jonas has not made further submissions to the court.

---

[2] Mr. Bisca and Mr. Jonas e-mailed each other in Romanian, their native language. Bisca Decl., Exs. 1, 2. Mr. Bisca translated both e-mails into English to submit them to the court. *Id.*, Ex. 3. Although the court has no reason to doubt Mr. Bisca's translation ability, the court would not ordinarily rely upon a translation from a witness employed by a party. The court relies on Mr. Bisca's translation in resolving this motion only because it does not prejudice Mr. Jonas.

ORDER – 4

## III. ANALYSIS

**A. The Court Denies the Motion for TRO Based on the Record in this Action as of September 29.**

For reasons not apparent to the court, Plaintiffs chose to renew their motion for a TRO without providing any new evidence to establish irreparable harm or the threat of irreparable harm. This choice is curious, because it appears that all of the new evidence that Plaintiffs later submitted was in their possession when they renewed the motion. Withholding the evidence until after Mr. Jonas had responded to the motion was unfair to him, and, on the record before the court, unjustified.

Even if Mr. Jonas had not responded to the renewed motion for TRO, the court would have denied the motion for the reasons stated in the May 5 order. Although Plaintiffs provided Mr. Jonas with notice of this action and their motion for TRO for the first time, they did nothing in their "renewed" motion to rectify their failure to establish irreparable harm.

Mr. Jonas's response to the renewed motion for TRO only strengthens the court's basis for denying the motion. Critically, Mr. Jonas declares that he has no intention of misusing the disputed intellectual property at the heart of this dispute. He also declares that he retains only one laptop from his employment, disputing Plaintiffs' contention that he kept two. Moreover, he is prepared to turn over the laptop to his counsel for preservation.

On this record, the court must deny Plaintiffs' motion for a TRO. It does so for the reasons stated in the May 5 order, amended only to reflect that Mr. Jonas has now had an opportunity to respond to the motion, and that his response strengthens the court's conclusion that Plaintiffs have neither suffered irreparable harm nor established that it is likely that they will suffer irreparable harm.

ORDER – 5

**B.  The New Evidence Plaintiffs Submitted on September 30 Does Not Justify Expediting Plaintiffs' Request for Injunctive Relief.**

Although the court declines to consider Plaintiffs' new evidence as a basis for granting their motion, it has reviewed their new evidence to determine if the court should require an expedited response from Mr. Jonas.  In that case, the court would treat the new evidence as the opening salvo in a new motion for TRO, and consider that evidence and Mr. Jonas's response on an expedited basis.  After reviewing the evidence, however, the court concludes that it does not suggest a threat of imminent harm that warrants expedited review.  Moreover, the new evidence raises questions that neither the evidence nor the limited briefing accompanying it answer.

First, the court finds that nothing in Mr. Jonas's e-mails to Mr. Sandoval and to Mr. Bisca is inconsistent with his declaration that he will not misuse Plaintiffs' confidential information or disputed intellectual property until this dispute is resolved.  Indeed, with one minor exception, those e-mails simply reiterate Mr. Jonas's belief that he owns the disputed intellectual property, and that the Second IP Agreement is void.  The court cannot, at least not on the current record, restrain Mr. Jonas's right to state his own position in the dispute over the intellectual property.  Plaintiffs make much of Mr. Jonas's statement in his e-mail to Mr. Bisca that he has not "all[ied] with any of [Mr. Sandoval's] enemies, *yet*."  Bisca Decl., Ex. 3 (emphasis added).  They assert that this is a veiled threat that Mr. Jonas will violate his agreements with Plaintiffs.  When compared with other evidence in the record, the court finds no reason to elevate this stray remark (one that was translated by a witness with interests adverse to Mr. Jonas) into a credible threat that Mr. Jonas will violate his agreements.  Indeed, although it has been nearly six months since Mr. Jonas's termination, there is no evidence that he has misused intellectual property in that time.  At best there is evidence of minor violations of his confidentiality obligations, and a possible violation of his non-compete agreement.

ORDER – 6

The court notes with interest the evidence that Mr. Jonas has begun some form of association with Opspring, a competing business. But that evidence fails to answer nearly every important question that arises from it. What is Opspring's business? How does it compete with Plaintiffs? What does Mr. Jonas do at Opspring, if anything? How long has he been associated with Opspring? The court cannot infer from the bare fact that Mr. Jonas has some association with an alleged competitor that he is violating the law or that Plaintiffs will be harmed by his conduct.

The same lack of detail clouds Plaintiffs' new evidence regarding the impact of Mr. Jonas's conduct on its relations with customers and investors. The most specific evidence is Mr. Sandoval's statement that "a signed letter of intent has been cancelled as a direct result of [Mr.] Jonas's April 23, 2008 email blast." Sandoval Decl. ¶ 3. Still, the evidence reveals little. What letter of intent was cancelled? What was the loss to Plaintiffs? How did Mr. Jonas's unlawful conduct cause that loss? Other evidence is even less specific. The court cannot award injunctive relief based on Mr. Sandoval's bare declaration that unspecified investors have "backed off" from Plaintiffs, or that unspecified "partners" have turned to other businesses. *Id.* Detailed evidence that connects these losses to Mr. Jonas's allegedly unlawful conduct might well support a request for injunctive relief. The lack of such detail in the evidence before the court is conspicuous.

Moreover, Plaintiffs generally fail to segregate the consequences of Mr. Jonas's unlawful conduct from conduct that is presumably lawful. As the court has noted, it is unaware of any authority that would permit it to prevent Mr. Jonas from airing his side of the dispute surrounding the intellectual property at issue. There is no indication that this conduct violates either of the intellectual property agreements or any other law that Plaintiffs assert against Mr. Jonas. At the same time, it appears that the disputed intellectual property is critical to Plaintiffs' business, so it would not be surprising if knowledge of the Mr. Jonas's claim to ownership makes investors and customers wary.

ORDER – 7

Nonetheless, without legal argument absent from the motions before the court, there is no basis to prevent Mr. Jonas from asserting his position. Mr. Jonas's agreements with Plaintiffs, at least on their face, prohibit disclosure of certain confidential information, misuse of intellectual property, and employment at competing businesses. They do not prevent Mr. Jonas from airing his disputes with Plaintiffs.

In a similar vein, Plaintiffs do not segregate the state court lawsuit as a cause of the harms of which they complain. Mr. Sandoval avers, in part, that the "the confidence of Plaintiffs' investors and business partners was shaken" as a result of the lawsuit. Sandoval Decl. ¶ 3. Plaintiffs, however, fail to explain how the consequences of a lawsuit by a third party can be a basis for awarding injunctive relief against Mr. Jonas.

Finally, the court notes that some of the new evidence is simply poorly fitted to the motion for TRO that Plaintiffs' filed nearly six months ago. For example, when they first filed the motion, Plaintiffs had no reason to raise the non-compete agreement as a basis for relief against Mr. Jonas. There is some evidence that Mr. Jonas may be working for a competing enterprise, but there is no legal argument regarding the enforceability of the non-compete agreement.

Upon reviewing the new evidence, the court concludes that it does not give the court cause to award injunctive relief without giving Mr. Jonas a full opportunity to respond, and without requiring Plaintiffs' to tailor a request for injunctive relief to encompass the new evidence and the unanswered questions that it raises. Plaintiffs may file a motion for preliminary injunction and note it for consideration in accordance with the court's local rules. The court will also consider a request for limited expedited discovery to support that motion, provided that Plaintiffs first meet and confer with Mr. Jonas to determine if they can agree on the scope and timing of that discovery. If the parties are unable to agree, they shall contact the court to arrange a teleconference. Similarly, Plaintiffs may request an expedited briefing schedule for the motion for preliminary injunction, provided that they first meet and confer with Mr. Jonas. Again, if

ORDER – 8

the parties are unable to agree regarding expediting briefing, they shall contact the court for a teleconference.

**IV. CONCLUSION**

For the reasons stated above, the court DENIES Plaintiffs' renewed motion for a TRO (Dkt. # 14). If Plaintiffs wish to continue their quest for injunctive relief, they must file a motion for preliminary injunction in accordance with this order.

DATED this 20th day of October, 2008.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 9